UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

RICHARD YOUMANS,

                    Plaintiff,

    -v-

THE CITY OF NEW YORK et al.,

                    Defendants.

Case No. 12-CV-4071(KMK)

OPINION & ORDER

---

Appearances

Richard Youmans
Stormville, NY
*Pro Se Plaintif*

Eric Brent Porter, Esq.
John Michael Buhta, Esq.
Lesley Berson Mbaye, Esq.
Emily Sweet, Esq.
New York City Law Department
New York, NY
*Counsel for Defendants*

KENNETH M. KARAS, District Judge:

       Plaintiff Richard Youmans, proceeding pro se, brings this Action against the City of New York ("the City"), Commissioner of the New York City Department of Correction Dora B. Schriro ("Schriro"), former Mayor of New York City Michael Bloomberg ("Bloomberg"), and Corizon Correctional Medical Director Dr. Jean Richard, ("Richard") (collectively, "Defendants"), for injuries that Plaintiff allegedly received while incarcerated at Rikers Island. Defendants move to dismiss pursuant to Rule 12(b)(6).  For the reasons stated below, the Motion is granted.

## I.  Background

### A. Factual Background

Plaintiff's Complaint can be read to allege the following facts.  Plaintiff was incarcerated at Rikers Island for six years, during which time he developed "extensive headaches, dizziness, blackouts, [and] blurred vision."  (Second Amended Complaint ("SAC") (Dkt. No. 23) ¶ II(D).)  Based on a 2012 Legal Aid Society letter to another court in this District that noted that the New York City Department of Correction ("NYC DOC") monitors methane levels on Rikers Island and Plaintiff's own unspecified internet research, Plaintiff believes that exposure to methane gas caused his symptoms.  (*Id.*)  Plaintiff asserts that Defendants were aware that Rikers Island is "a toxic waste . . . landfill that . . . emitted methane and other dangerous gases," as well as the effects of such emissions on inmate health.  (*Id.*)  However, according to Plaintiff, NYC DOC failed to notify either inmates or their visitors—including Plaintiff's family—of their exposure to these emissions (*Id.*)

Plaintiff sought medical treatment for his symptoms, and is dissatisfied with the treatment he received.  Specifically, Defendant claims that "[NYC DOC] Medical Staff" denied Plaintiff a CT Scan or MRI, (*id.* ¶ III), and that Defendants Schriro and Richard denied Plaintiff's request for a second medical opinion, (*id.* ¶ II(D)).  Plaintiff also claims that his migraine headaches "continued [and were] disregarded by [the] medical manager."  (*Id.* ¶ III.)  Plaintiff further claims that Defendants knew of Plaintiff's "methane gas exposure[,] yet instead of fixing the situation[,] they all just pushed this issue under the rug."  (*Id.* ¶ II(D).)

### B.  Procedural Background

On May 21, 2012, Plaintiff filed his Complaint.  (*See* Dkt. No. 2.)  He subsequently amended his Complaint on July 2, 2012, (*see* Dkt. No. 10), and amended it again on February

15, 2013, (*see* Dkt. No. 23).  The Court construes Plaintiff's SAC to allege violations of the

Eighth and the Fourteenth Amendments, *see United States v. Georgia*, 546 U.S. 151, 157 (2006)

(noting that "the Due Process Clause of the Fourteenth Amendment incorporates the Eighth

Amendment's guarantee against cruel and unusual punishment" (citing *Louisiana ex rel. Francis*

*v. Resweber*, 329 U.S. 459, 463 (1947) (plurality opinion))), which violations would entitle

Plaintiff to damages under 42 U.S.C. § 1983.[1]

       Plaintiff claims to have suffered "mental strain" and "physical hardships" as a result of

Defendants' actions (or lack thereof).  (SAC ¶ III.)  By way of remedy, Plaintiff seeks a CT Scan

or MRI, the "eliminat[ion of] mental, physical, [and] emotional stress," and that Defendants pay

"special attention [to] inordinate diseases linked to the landfill project" and provide "proper toxic

screening."  (*Id.* ¶ V.)  In addition, Plaintiff seeks money damages totalling $67,000,000.  (*Id.*)

       Defendants filed a Motion To Dismiss Plaintiff's Second Amended Complaint pursuant

to Rule 12(b)(6) of the Federal Rules of Civil Procedure, along with a Memorandum of Law in

Support of their Motion ("Defs.' Mem."), on July 16, 2013.  (*See* Dkt. Nos. 32, 33.)  Plaintiff

filed a Memorandum in Opposition to Defendants' Motion ("Pl.'s Mem."), along with

supporting exhibits, on August 29, 2013.[2]  (*See* Dkt. No. 42.)  Defendants filed Reply

---

[1] This interpretation accords with Plaintiff's representation that "[t]he defendants . . . are being sued . . . pursuant to the civil rights violations of the United States Constitution (8th Amendment, of cruel and unusual punishment, that resulted from their deliberate indifference to plaintiff's health, and/or human conditions of confinement."  (Pl.'s Mem. ¶ 2.)

[2] This filing contains both additional allegations not present in Plaintiff's SAC, and exhibits that Plaintiff believes provide support for his claims.  (*See* Dkt. No. 42.)  While the Court may consider "documents attached or incorporated in the complaint by reference," *Vilardell v. U.S. Citizenship and Immigration*, No. 11-CV-5765, 2013 WL 749508, at *3 (S.D.N.Y. Feb 28, 2013), "'a complaint may not be amended by the briefs in opposition to a motion to dismiss,'" *Chamberlain v. City of White Plains*, No. 12-CV-5142, 2013 WL 6477334, at *15 n.19 (S.D.N.Y. Dec. 10, 2013) (quoting *Wright v. Ernst & Young LLP,* 152 F.3d 169, 178 (2d Cir.1998)).

Memorandum on October 11, 2013, ("Defs.' Reply Mem." (Dkt. No. 37)), to which Plaintiff submitted a Sur-reply on November 5, 2013 ("Pl.'s Reply Mem." (Dkt. No. 39)). Plaintiff's Sur-reply was neither contemplated by the Court's July 2, 2012 Scheduling Order, (*see* Dkt. No. 31), nor submitted with prior approval pursuant to the Court's individual rules of practice. However, the Court will nonetheless consider Plaintiff's Sur-reply submission, to the extent that it pertains to allegations present in his SAC, in accordance with the special solicitude afforded pro se plaintiffs.

## II.  Discussion

### A.  Standard of Review

The Supreme Court has held that "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his [or her] 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (third alteration in original) (citations omitted). Instead, the Supreme Court has emphasized that "[f]actual allegations must be enough to raise a right to relief above the speculative level," *id.*, and that "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563. A plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. But if a plaintiff has "not nudged [his or her] claims across the line from conceivable to plausible, the[ ] complaint must be dismissed." *Id.*; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer

4

more than the mere possibility of misconduct, the complaint has alleged—but it has not

'show[n]'—'that the pleader is entitled to relief.'" (alteration in original) (citation omitted)

(quoting Fed. R. Civ. P. 8(a)(2))).

In considering Defendants' Motion To Dismiss, the Court is required to consider as true

the factual allegations contained in the Complaint. *See Ruotolo v. City of New York*, 514 F.3d

184, 188 (2d Cir. 2008) ("We review de novo a district court's dismissal of a complaint pursuant

to Rule 12(b)(6), accepting all factual allegations in the complaint and drawing all reasonable

inferences in the plaintiff's favor." (internal quotation marks omitted)); *Gonzalez v. Caballero*,

572 F. Supp. 2d 463, 466 (S.D.N.Y. 2008) (same).  Moreover, "[i]n adjudicating a Rule 12(b)(6)

motion, a district court must confine its consideration to facts stated on the face of the complaint,

in documents appended to the complaint or incorporated in the complaint by reference, and to

matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d

99, 107 (2d Cir. 1999) (internal quotation marks omitted).

Because Plaintiff is proceeding pro se, the Court must construe his pleadings liberally

and "interpret them to raise the strongest arguments that they suggest." *Maisonet v. Metro.

Hosp. & Health Hosp. Corp.*, 640 F. Supp. 2d 345, 347 (S.D.N.Y. 2009) (internal quotation

marks omitted); *see also Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474–75 (2d Cir.

2006).  This admonition "applies with particular force when a plaintiff's civil rights are at issue."

*Maisonet*, 640 F. Supp. 2d at 348; *see also McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir.

2004).  But the liberal treatment afforded to pro se litigants does not exempt a pro se party "from

compliance with relevant rules of procedural and substantive law." *Maisonet*, 640 F. Supp. 2d at

348 (internal quotation marks omitted).

B.  Analysis

    1.  Serious Medical Need

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments."

U.S. Const. amend. VIII.  However, the Eighth Amendment does not require "comfortable"

prison conditions; rather, it ensures that conditions of confinement do not "involve the wanton

and unnecessary infliction of pain."  *Rhodes v. Chapman*, 452 U.S. 337, 347, 349 (1981).  "To

state an Eighth Amendment claim based on conditions of confinement, an inmate must allege

that: (1) objectively, the deprivation the inmate suffered was sufficiently serious that he was

denied the minimal civilized measure of life's necessities, and (2) subjectively, the defendant

official acted with a sufficiently culpable state of mind, such as deliberate indifference to inmate

health or safety."  *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013) (alterations and internal

quotation marks omitted).  "To meet the objective element, the inmate must show that the

conditions, either alone or in combination, pose an unreasonable risk of serious damage to his

health."  *Id.*; *see also Seymore v. Dep't of Corr. Servs.*, No. 11-CV-2254, 2014 WL 641428, at

*3 (S.D.N.Y. Feb. 18, 2014) ("[T]he Second Circuit . . . has explained that '[b]ecause society

does not expect or intend prison conditions to be comfortable, only extreme deprivations are

sufficient to sustain a 'conditions-of-confinement claim.'" (alteration in original) (quoting

*Blyden v. Mancusi*, 186 F.3d 252, 263 (2d Cir. 1998))).  To meet the subjective element, a

plaintiff must show that the defendant "acted with more than mere negligence," and instead

knew of and disregarded an "excessive risk to inmate health or safety."  *Walker*, 717 F.3d at 125

(internal quotation marks omitted).  Under the Eighth Amendment, officials may not "create

inhumane prison conditions, deprive inmates of basic necessities, or fail to protect their health or safety." *Overton v. Bazzetta*, 539 U.S. 126, 137 (2003).[3]

Plaintiff alleges that methane expulsions at or near Rikers Island have caused him to suffer from "Extensive headaches, Dizziness, Blackouts, [and] Blurred vision." (SAC ¶ II(D).) Defendants challenge the sufficiency of Plaintiff's allegations both as they relate to the existence of any "methane expulsions" and to any causal connection between any such "methane expulsions" and Plaintiff's claimed symptoms.

In his Second Amended Complaint, Plaintiff references a letter from the Legal Aid Society to the Honorable Harold Baer, Jr. in an unrelated civil case in this District, (*Benjamin v. Schriro*, No. 75-CV-3073), discussing monitors that the Department of Correction allegedly have used to collect data on any "methane expulsions." (*Id.*) In his Opposition to Defendants' Motion To Dismiss, Plaintiff included a copy of this letter, which addresses a number of allegations by a Rikers Island inmate.[4] The complaints listed in the Legal Aid letter involve

---

[3] In the SAC, Plaintiff does not indicate whether he was a convicted prisoner or a pretrial detainee during the relevant time period. A convicted prisoner's claim based on the conditions of his confinement is analyzed under the Eighth Amendment. *See Weyant v. Okst*, 101 F.3d 845, 856 (2d Cir. 1996) (noting that the Eighth Amendment governs medical claims of convicted persons because of its prohibition of "cruel and unusual punishment"). In the case of a pretrial detainee, however, the same claim is analyzed under the Fourteenth Amendment's Due Process Clause. *See Caiozzo v. Koreman*, 581 F.3d 63, 69 (2d Cir. 2009) (noting that because a pretrial detainee is not being "punished," pretrial detainees are protected by the Due Process Clause of the Fourteenth Amendment). However, Plaintiff's status is of no moment for these purposes, because "[c]laims for deliberate indifference to a serious medical condition . . . should be analyzed under the same standard irrespective of whether they are brought under the Eighth or Fourteenth Amendment." *Id.* at 72.

[4] It is appropriate to consider this letter, as Plaintiff specifically referenced it in his Second Amended Complaint. *See Leonard F.*, 199 F.3d at 107 (permitting consideration of "documents . . . incorporated in the complaint by reference").

7

everything from blocked vents, to excessive water pressure in the sinks, to infrequent mail delivery.  In the last paragraph of this letter, Legal Aid notes:

> [The inmate] states that Rikers Island is contaminated with medical and toxic waste and vapors and he wants an order preventing him from being held there.  We are not aware of such a problem of toxic contamination, except for the ongoing problem of methane generation from the landfill on which much of Rikers is built.  We understand that the Department [of Correction] has taken measures to contain and control methane discharges and has installed equipment to detect methane contamination in jails affected by this problem.

(Pl.'s Mem. Ex. C, at unnumbered 9.)

This letter comprises the entirety of Plaintiff's assertion that there are "methane expulsions" on Rikers Island.  Moreover, Plaintiff offers no support for his claim that his symptoms are caused by any methane expulsions.  As pleaded, Plaintiff has failed to plausibly state a constitutional violation related to the methane expulsions.  Indeed, courts within this District have routinely dismissed the types of bare allegations made by Plaintiff here regarding methane gas exposure at Rikers Island.  For example, in *Gladden v. City of New York*, No. 12-CV-7822, 2013 WL 4647193 (S.D.N.Y. Aug. 29, 2013), the court dismissed an Eighth Amendment claim because it was based "entirely on an unidentified internet posting that apparently asserts the presence of methane on Rikers Island," and because the plaintiff offered "no factual allegation that connect[ed] his purported injuries to methane exposure."  2013 WL 4647193, at *2.  Similarly, in *Loccenitt v. City of New York*, No. 11-CV-5651, 2012 WL 3822701 (S.D.N.Y. July 30, 2012), the court held that third-party reports of methane exposure at Rikers Island were insufficient to state an Eighth Amendment violation, as plaintiff failed to allege any facts "linking any of [his] alleged conditions to any of the alleged environmental toxins . . . ."  2012 WL 3822701, at *4, *adopted by* 2012 WL 3822213 (S.D.N.Y. Sept. 4, 2012).  The same conclusion was reached in *Cepeda v. Bloomberg*, No. 11-CV-2914, 2012 WL 75424

8

(S.D.N.Y. Jan. 4, 2012), where the court dismissed an Eighth Amendment claim because the plaintiff's allegations regarding an environmental study, which showed that Rikers Island had been a hazardous waste cite, did not plausibly establish that it was currently contaminated, and because the plaintiff failed to include any factual allegations linking his symptoms to any methane gas exposure.  2012 WL 75424, at *2.

And so it is here.  Plaintiff's allegations boil down to a third-party letter discussing the "problem" of methane generation, but this letter also acknowledges that the Department of Correction has adopted measures to contain and control any methane discharges.  Moreover, Plaintiff has offered no allegations plausibly linking his medical issues to any methane exposure. Accordingly, the Court grants Defendant's motion on this ground.

### 2.  Deliberate Indifference

However, whether or not Plaintiff ultimately can link any methane expulsions to his symptoms, the Court also has considered whether Plaintiff has plausibly stated an Eighth Amendment claim based on these alleged symptoms alone.  In other words, Plaintiff's complaint could be construed to allege unconstitutional conditions based on Defendants' failure to adequately address his symptoms quite apart from their cause.  In considering this claim, the Court assumes, without deciding, that Plaintiff's symptoms (migraines, black-outs, dizziness) are objectively serious enough to raise the question of whether Defendants were deliberately indifferent.  Here, Plaintiff claims that Dr. Richard and Commissioner Schriro provided inadequate medical care in denying Plaintiff a CT Scan or MRI and refusing to grant him leave to seek a second medical opinion.

In making this claim, Plaintiff does not allege he was denied treatment entirely.  (*See* Pl.'s Mem. 7, 8 (noting that Rikers Island medical staff provided Plaintiff with medication,

including Naproxen, Tylenol, Ibuprofen, Robaxin, and Chlorpheniramine Maleate; that plaintiff was referred to see a neurologist; and that "oxygen treatment" was suggested by Dr. Joon Park).) Rather, Plaintiff alleges that a prison doctor failed to provide the tests that Plaintiff requested (an MRI and/or CT Scan) and denied him a second opinion about his course of treatment (implying that there has been a first opinion).  The law is clear that a medical decision about whether to order a test "does not represent cruel and unusual punishment," and is "[a]t most . . . medical malpractice," which can be properly redressed under state tort law.  *Estelle v. Gamble*, 429 U.S. 97, 107 (1976); *see also Gumbs v. Dynan*, No. 11-CV-857, 2012 WL 3705009, at *14 (E.D.N.Y. Aug. 26, 2012) ( "[A] medical judgment is not deliberate indifference just because it is not the inmate's preferred course of treatment.  'Whether to order an MRI or similar diagnostic treatments is a classic example of a matter for medical judgment, and where the treatment provided is responsive to the prisoner's condition, . . . the fact that a prisoner might prefer different treatment does not give rise to a Constitutional violation.'" (second alteration in original) (quoting *Victor v. Milicevic*, 361 F. App'x 212, 215 (2d Cir. 2010)).  Also, courts in the Second Circuit have held that failure to provide a second opinion is not generally a violation of a prisoner's Eighth Amendment rights.  *See*, *e.g.*,  *Smith v. McGinnis*, No. 01-CV-6244, 2003 U.S. Dist. LEXIS 25768, at *14 (W.D.N.Y. Sept. 30, 2003) ("Although plaintiff may have wanted to get a second medical opinion, defendants' refusal to do so does not give rise to an Eighth Amendment violation."); *Holton v. Fraitellone*, No. 96-CV-1312, 1997 WL 328066, at *7 (S.D.N.Y. June 16, 1997) ("Obtaining a second opinion may be considered wise, but it is not generally required under the Eighth Amendment."); *cf. Walker v. Pompan*, 10-CV-1425, 2012 WL 1094325, at *4 (N.D. Cal. Mar. 30, 2012) ("A difference of opinion between a prisoner-patient and prison medical authorities regarding treatment does not give rise to a [§] 1983

10

[deliberate indifference] claim." (second alteration in original) (internal quotation marks omitted) *aff'd sub nom. Walker v. Pom Pan*, 529 F. App'x 851 (9th Cir. 2013)).  As Plaintiff's SAC only asserts that Plaintiff should have received certain tests and a second opinion, it fails to satisfactorily plead deliberate indifference.

Even if Plaintiff's claims were sufficient to establish inadequate medical treatment, the facts as pleaded by Plaintiff do not plausibly establish that Defendants Schriro and Richard acted with "a sufficiently culpable state of mind." *Walker*, 717 F.3d at 125 (internal quotation marks omitted).  To survive a motion to dismiss, Plaintiff must allege that Schriro and Richard acted with "a mental state equivalent to subjective recklessness, as the term is used in criminal law." *Salahuddin v. Goord*, 467 F.3d 263, 280 (2d Cir. 2006); *see also Gladden*, 2013 WL 4647193, at *2 ("To meet the subjective element, the plaintiff must show that the defendant acted with more than mere negligence, and instead knew of and disregarded an excessive risk to inmate health or safety." (internal quotation marks omitted)).  In other words, "the charged official [must] act or fail to act while *actually aware* of a substantial risk that serious inmate harm will result." *Salahuddin*, 467 F.3d at 280 (emphasis added).  From this awareness requirement, it follows that "mere negligence is not actionable, nor is mere medical malpractice . . . tantamount to deliberate indifference." *Green v. McLaughlin*, 480 F. App'x 44, 48 (2d Cir. 2012) (alteration in original) (internal quotation marks omitted); *see also Salahuddin*, 467 F.3d at 280 (noting that "recklessness entails more than mere negligence").  Moreover, "[t]he mere fact that an inmate feels that he did not receive adequate attention . . . does not constitute deliberate indifference." *Crique v. Magill*, No. 12-CV-3345, 2013 WL 3783735, at *3 (S.D.N.Y. July 9, 2013).

Plaintiff's SAC cannot be read to suggest that Defendants Schriro or Richard possessed the requisite intent.  Rather, Plaintiff appears only to express his disagreement with their medical

judgment and/or course of treatment.  It therefore fails to plead a claim that meets the requirements for a deliberate indifference claim under *Walker* and must be dismissed pursuant to Rule 12(b)(6).  However, Plaintiff's Memoranda in relation to this motion suggest that Plaintiff possesses information not included in his SAC that he may wish to incorporate into his Complaint.  Plaintiff has already amended his Complaint twice, but the Court sees fit to provide Plaintiff with one more opportunity to amend, in keeping with the special solicitude afforded to pro se litigants.  *See Tracy*, 623 F.3d at 101 ("A pro se plaintiff . . . should be afforded an opportunity fairly freely to amend his complaint." (alteration in original) (internal quotation marks omitted)).

In deciding whether to file an amended complaint, Plaintiff should ensure he has a good-faith basis to make each allegation, particularly in light of the medical records Plaintiff attached to his Opposition Memorandum.  *See Dumont v. United States*, No. 13-CV-0873, 2013 WL 6240468, at *12 (N.D.N.Y. Dec. 3, 2013) ("Plaintiff is . . . warned that he is not protected from Rule 11 sanctions merely because he appears pro se."); *Mac Truong v. Hung Thi Nguyen*, No. 10-CV-386, 2013 WL 4505190, at *3 (S.D.N.Y. Aug. 22, 2013) ("The fact that a litigant appears *pro se* does not shield him from Rule 11 sanctions." (internal quotation marks omitted)).  If Plaintiff chooses to do so, he must file a third and final amended complaint within 30 days of the issuance of this Order.  The Court urges Plaintiff to be mindful of the pleading requirements discussed above in crafting his amended complaint, as the Court will not provide Plaintiff an additional opportunity to amend.[5]

---

[5] Because the Court concludes that Plaintiff has not pleaded a constitutional violation, the Court need not and therefore does not consider Defendants' arguments regarding personal or *Monell* liability.

### III.  Conclusion

For the reasons discussed above, Defendants' Motion To Dismiss is granted, and

Plaintiff's Second Amended Complaint is dismissed without prejudice.  The Clerk of Courts is

respectfully requested to terminate the pending Motion.  (*See* Dkt. No. 32.)  Plaintiff may file an

amended complaint within 30 days.

SO ORDERED.

Dated: March 31, 2014
      White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

13